**JUAN LUIS, GOVERNOR OF THE VIRGIN ISLANDS,**
Plaintiff

v.

**HUGO DENNIS, JR., SIDNEY LEE, WILLIAM HARVEY, BENT LAWAETZ, CLEONE CREQUE–MAYNARD, RUBY SIMMONDS, LILLIANA BELARDO DE O'NEAL, LORRAINE BERRY, ADELBERT BRYAN, VIRDIN BROWN, ELMO ROEBUCK, MILTON FRETT, EDGAR ILES, LLOYD WILLIAMS, and KENNETH MAPP,** Constituting the Fifteenth Legislature of the Virgin Islands, Defendants

Civil No. 292-1983

District Court of the Virgin Islands

Div. of St. Croix

November 28, 1983

ALAN D. SMITH, ESQ., First Assistant Attorney General (Department of Law), St. Thomas, V.I., *for plaintiff*

ERIC E. DAWSON, ESQ., Chief Legal Counsel (Fifteenth Legislature of the Virgin Islands), St. Thomas, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on an Action for Declaratory Judgment pursuant to 5 V.I.C. §§ 1261–1262 and 28 U.S.C. § 2201. At issue is the validity of Act No. 4836 enacted by the Fifteenth Legislature of the Virgin Islands on June 14, 1983, over the veto of Governor Juan Luis. For the reasons set forth below we find that

Act No. 4836 is in violation of the doctrine of Separation of Powers as embodied in the Revised Organic Act of 1954 and therefore cannot stand.

## I. FACTS

The legislation in question was first considered and passed by the Legislature as Bill No. 15-0150 on May 9, 1983. It was vetoed by the Governor on May 25, 1983, but shortly thereafter the Legislature overrode the veto with a two-thirds vote. On October 1, 1983, this controversial piece of legislation became effective as Act No. 4836, adding a new section to Title 3 of the Virgin Islands Code. It provides in pertinent part:

§ 65c. Advice and consent of Legislature

Notwithstanding any other provision of law to the contrary, whenever the provision of any law provides that the head of an executive department of the Government of the Virgin Islands or the head of any administrative unit or bureau within an executive department of the Government of the Virgin Islands shall be appointed or nominated by the Governor with the advice and consent or approval of the Legislature of the Virgin Islands, such advice and consent or approval shall not be considered as having been given until a majority of all the members of the Legislature have voted in the affirmative on such appointment or nomination.

The practical effect of Act No. 4836 is to increase the minimum number of affirmative votes necessary to confirm the appointment of the head of an executive department. Since 1936, a majority of a quorum present and voting, or at least five senators, was sufficient to confirm a gubernatorial nomination. Act No. 4836 requires a majority of all the members of the Legislature to vote affirmatively.

The issue presented for the Court's determination is whether, by requiring that an absolute majority of the Legislature give its advice and consent to certain gubernatorial appointments, Act No. 4836 usurps the Governor's power to appoint pursuant to 48 U.S.C. § 1597(c) in violation of the doctrine of Separation of Powers.

## II. DISCUSSION

A. *Separation of Powers Doctrine.*

It is not disputed that the doctrine of Separation of Powers is applicable in the Virgin Islands. In Municipality of St. Thomas & St. John v. Gordon, 78 F.Supp. 440 (D.V.I. 1948), the court stated

that the Organic Act of the Virgin Islands divides the Government into three separate departments: the legislative, executive and judicial.[1] Id. at 442. See also Government v. Eleventh Legislature, 13 V.I. 53, 83 (D.V.I. 1976). The division of governmental powers among the three branches of government, each of which is separate from the others, and all of which are co-ordinate, is one of the fundamental principles of the American constitutional system.

■ The importance of the Separation of Powers doctrine has been restated by the Supreme Court on numerous occasions. See, e.g., Buckley v. Valeo, 424 U.S. 1, 118–124 (1975); O'Donoghue v. United States, 289 U.S. 516, 533 (1933); Springer v. Philippine Islands, 277 U.S. 189, 201 (1927); Myers v. United States, 272 U.S. 52 (1926); Massachusetts v. Mellon, 262 U.S. 447, 488 (1922). According to Mellon, supra, the functions of the government under this system are apportioned.

> To the legislative department has been committed the duty of making laws; to the executive the duty of executing them; and to the judiciary, the duty of interpreting and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other, and neither may control, direct, or restrain the action of the other.

Id.

■ By setting up a tripartite government, the Framers of the Constitution built in a delicate system of checks and balances to safeguard against the encroachment or expansion of one branch at the expense of another. This was clearly expressed in Myers, supra:

> The doctrine of the separation of powers was adopted by the Convention of 1787 not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was not to avoid friction, but, by means of the inevitable friction incident to the distribution of the governmental powers among three departments, to save the people from autocracy.

Id. at 293 (Brandeis, J., dissenting).

---

[1] Although this case was decided under the original Organic Act of 1936, the outcome would be no different under the Revised Organic Act of 1954. The Separation of Powers doctrine is implicit in the 1954 Act. The powers of the legislative branch are outlined in 48 U.S.C. §§ 1571–1576; the executive branch in 48 U.S.C. §§ 1591–1599; the judicial branch in 48 U.S.C. §§ 1611–1617.

The Governor urges that under this doctrine the Legislature is precluded from infringing upon the executive power to appoint by expanding the power of advice and consent as envisioned in Act No. 4836. The Legislature, however, contends that it is not attempting to exercise its appointing power,[2] or condition the appointing power it has delegated to the Governor; it is merely enacting into law the procedure for giving its advice and consent to appointments of the Governor. Brief of Defendants at 9.

### 1. Executive Power to Appoint

It is undisputed that the Governor has the power to appoint and remove all officers of the executive branch of the Government of the Virgin Islands. 48 U.S.C. § 1591, Revised Organic Act of 1954, § 11. When appointing the heads of the executive branches, however, the Governor must act with the advice and consent of the Legislature. 48 U.S.C. § 1597(c), Revised Organic Act of 1954, § 16(c).

In determining whether Act No. 4836 violates the doctrine of Separation of Powers it is necessary to answer the question whether the power to confirm is a legislative or executive function. Other courts deciding the issue have found that confirmation or rejection of the Governor's appointments is an executive function which has been expressly delegated to the Senate or Legislature.[3] Myers v. United States, 272 U.S. 138–39 (1926); Wittler v. Baumgartner, 144 N.W.2d 62, 71 (Sup. Ct. Neb. 1966); Walker v. Baker, 196 S.W.2d 324, 328 (Tex. 1946), 16 C.J.S. Constitutional Law § 168 (1956).

This was also the finding in Bradner v. Hammond, 553 P.2d 1 (Alaska 1976), where the court was faced with a very similar factual situation as that in the case at hand. It found that the appointing power must be an executive function lest the responsibility for carrying out executive duties be diffused and the goal of separation of the branches of the government be defeated. The confirmation power, the court reasoned, is a specific attribute of the appointive power of the executive. Id. at 6–7.

---

[2] The Legislature claims that whereas the Governor had full power of appointment in the earlier Organic Act, 48 U.S.C. § 1591 was intended to expand the power of the legislature to control appointments. Brief of Defendants at 8. The appointments referred to, however, are clearly distinguished from the nine executive departments over which the Governor retains the power to appoint with the advice and consent of the legislature. 48 U.S.C. § 1597(a), Revised Organic Act of 1954, § 16(a).

[3] Further proof of this is the fact that the power of advice and consent is not found in Article I of the U.S. Constitution which enumerates the legislative functions, but in the executive powers stated in Article II.

The Court in Springer v. Philippine Islands, 277 U.S. 189 (1927) distinguished the legislative power as the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. "Not having the power of appointment, unless expressly granted or incidental to its powers, the legislature cannot engraft executive duties upon a legislative office, since that would be to usurp the power of appointment by indirection."[4] Id. at 202; Camacho v. Civil Service Comm'n, 666 F.2d 1257 (9th Cir. 1982).

## 2. Power to Advise and Consent

The advice and consent power of the Legislature, therefore, represents a permitted invasion by one branch of the government into another. In Walker, supra, this was interpreted to mean that since the Constitution specifies the circumstances under which the Senate may defeat the Governor's appointments, there is an implied prohibition against its power to add to those circumstances. Id. at 328. Similarly, in Wittler, supra, the court found that the Legislature is prohibited by Constitutional provision from appointing officers, either directly or indirectly. Id. at 71.

Such an invasion of the Legislature into the traditionally executive functions of appointment should be strictly construed. Myers, supra at 139. An occasional specific provision conferring upon a given branch of government certain functions, which, by their nature, would otherwise fall within the general scope of the powers of another does not circumvent the purposes of the doctrine of Separation of Powers. Rather, such exceptions serve to emphasize the generally inviolate nature of the system. O'Donoghue v. United States, 289 U.S. 516, 530 (1933).

This brings us to the crux of the controversy. The Court must decide whether the Legislature can properly perform its advice and consent function by requiring that a majority of all 15 legislators vote affirmatively to confirm a gubernatorial appointee or whether this is a usurpation of the executive function in violation of the doctrine of Separation of Powers.

---

[4] There is authority indicating that where, as in the Virgin Islands, the organic act of a territory vests the appointment of certain officers in the governor, an act of the territorial legislature attempting to change the manner of appointment is void. 16 C.J.S. Constitutional Law § 131 (1956); cf. McCornick v. Pratt, 30 P. 1091 (1892) (legislature attempted to circumvent Governor's power of appointment by creating a board whose members, they claimed, were not "officers" covered by the Organic Act); Taylor v. Stevenson, 9 P. 642 (1886) (legislative enactment held to be void because it divested the Governor of the power to appoint certain officers as provided in the Organic Act.).

378

There is no language in the Revised Organic Act outlining how the power of advice and consent is to be exercised over executive nominations. Nor does the legislative history of the Revised Organic Act provide any insight into the intended meaning of advice and consent. S. Rep. No. 1271, 83rd Cong., 2d Sess.

The procedure consistently followed since 1936, however, was that mandated by Congress to enact legislation.[5] This section of the Revised Organic Act states:

> The quorum of the Legislature shall consist of eight (8) of its members. No bill shall become law unless it shall have passed at a meeting, at which a quorum was present by the affirmative vote of a majority of the members present and voting, which vote shall be by yeas and nays.

48 U.S.C. § 1575(a), Revised Organic Act of 1954, § 9(a). Revised Organic Act of 1954, § 9(a).

In its own rules of procedure promulgated on January 10, 1983, the Fifteenth Legislature did not specify the number of votes necessary to give its advice and consent to nominations of the Governor. It did originally provide, however, that

> [u]nless otherwise required by these Rules, all measures or questions before the Legislature or any of its committees shall require an affirmative majority vote, a quorum being present, for passage.

Rules of the Senate, § 716.

In other instances both the United States Congress and the Virgin Islands Senate have made their intentions clear. Aberrations from the general rule are specified in 48 U.S.C. § 1575(d),[6] which provides that two-thirds of the Legislature must agree to override the veto of the Governor, and 48 U.S.C. § 1591[7] enabling the Legislature to revoke a proclamation of martial law with a two-thirds vote.

The Governor and the Legislature have interpreted this congressional silence in the case of advice and consent differently. The

---

[5] If a gubernatorial appointment was considered a Bill or Resolution in the Legislature, the Court would have to look no further than 48 U.S.C. § 1575(a). A Bill, however, is a draft of a proposed law from the time of its introduction into the legislature until passage. The confirmation of a nominee takes an all together different route, going directly to the Committee on Rules and Nominations. It does not receive a number and is not reported in the Virgin Islands Session Laws. Rules of the Senate—United States Virgin Islands—Fifteenth Legislature §§ 301(1), 514(g), 608(a).

[6] Revised Organic Act of 1954, § 9(d).

[7] Revised Organic Act of 1954, § 11.

Legislature claims that Congress has left it free to fashion an appropriate mechanism, which it has done by enacting Act No. 4836. Brief of Defendants at 3. The Governor argues that had Congress intended the grant of power to the Legislature to confirm executive appointments by advice and consent be carried out by any other method than a majority present and voting, it would have expressly. so stated. Brief of Plaintiff at 13. We agree with this interpretation.

■ The absence of any legislative history on the question of advice and consent is itself significant. To this Court, it appears that the Senate of the United States, by failing to indicate otherwise, intended that the procedures in the Revised Organic Act for confirmation of gubernatorial appointments follow the pattern for federal appointments. If that is indeed the case, as we think it is, then when the Governor of the Virgin Islands submits an appointment for confirmation to the Legislature, a majority of those present and voting, a quorum being present, would be sufficient to confirm the appointment.

Further support for this interpretation can be found by analogizing the advice and consent power found in the Revised Organic Act to that in the United States Constitution. Article II sets forth the Appointing Power of the President stating "he shall nominate, and by and with the Advice and Consent of the Senate shall appoint . . . ." U.S. Const., Art. 2, § 2, cl. 2. The Constitution does not specify how many senators are required to give their advice and consent.[8] Instead Congress has fashioned its own procedure in Rule XXXI of the Senate Rules by providing that a majority of those present and voting, a quorum being present, may give their advice and consent to presidential nominations.

■ In United States v. Ballin, 144 U.S. 1 (1891), the Court stated:

[T]he general rule of all parliamentary bodies is that, when a quorum is present, the act of a majority of the quorum is the act of the body. This has been the rule for all time, except so far as in any given case the terms of the organic act under which the body is assembled have prescribed specific limitations. As, for instance, in those states where the Constitution provides that a majority of all the members elected to either house shall be

---

[8] It is interesting to note that also contained in Art. 2, § 2, cl. 2 is the President's Treaty Making Power. Here it is clearly set forth that two-thirds of the Senators present must concur.

necessary for the passage of any bill. No such limitation is found in the federal Constitution, and therefore the general law of such bodies obtains.

Id. at 6–7. See also FTC v. Flotill Products, 389 U.S. 179, 183–84 (1967) (extensive citations for proposition that the almost universally accepted common law rule is that in the absence of a contrary statutory provision a majority of a quorum is sufficient to act); WIBC, Inc. v. FCC, 259 F.2d 941 (D.C. Cir. 1958); Clarke v. City Council of Waltham, 101 N.E.2d 369, 370 (Mass. 1951).

In Ballin, supra, the Court found that the Constitution empowers each house to determine its rules of proceedings, but they may not thereby ignore Constitutional restraints or violate fundamental rights. Also, there should be a reasonable relation between the method of proceeding and the result which is sought to be attained. Id. at 5.

### 3. Usurpation of Executive Power to Appoint

The only question which remains to be answered is whether Act No. 4836, by expanding the advice and consent power of the Legislature, is a substantial interference of the executive power to appoint thereby ignoring constitutional restraints.

■ When a statute is challenged under the constitutional doctrine of Separation of Powers, the court must search for a usurpation by one branch of government of the powers of another branch on the specific facts and circumstances presented. State ex rel. Schneider v. Bennett, 547 P.2d 786, 792 (Kan. 1976). Such a usurpation must be a significant interference where one branch of the government is subjected directly or indirectly to the coercive influence of the other. Id.; Leek v. Theis, 539 P.2d 304, 322 (Kan. 1975).[9]

---

[9] The Defendants cite Leek v. Theis as a major precedent supporting their argument. We cannot agree, however, with the premise of that case, along with a string of Kansas cases from the same court, that:

> Despite the excellent framework which various cases have constructed, this court has held the separation of powers of government has never existed in pure form except in political theory . . . [P]ractically, the absolute independence of the departments and complete separation is both impractical and unintended.

Id. at 321–22.

As stated previously the doctrine of separation of powers must always be construed along with the doctrine of checks and balances which permits certain intrusions among the branches of government. See Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635 (1952) (Jackson, J., concurring).

■ Different courts have set forth tests to determine whether legislation disrupts the proper balance between the coordinate branches of government by infringing on the powers of the executive branch. The Supreme Court enunciated such a standard in Nixon v. Administration of General Services, 433 U.S. 425 (1976):

> [T]he proper inquiry focuses on the extent to which [the legislation] prevents the Executive Branch from accomplishing its constitutionally assigned function. Only where the potential for disruption is present [the court must] determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress.

Id. at 443. For a similar test see Parcell v. Kansas, 468 F.Supp. 1274 (D. Kan. 1979), aff'd sub nom. Parcell v. Governmental Ethics Comm'n, 639 F.2d 628 (10th Cir. 1980).

■ The Legislature distinguishes the power to appoint and the power to provide advice and consent as two separate functions. The authority cited is persuasive. Leek, supra, at 323; Biggs v. State Dept. of Retirement System, 622 P.2d 1301, 1304 (Wash. 1981). They may well be two separate functions, but that does not mean that Act No. 4836 does not encroach upon the Governor's power of appointment. It is true that the Legislature is not doing the actual appointing or nominating, but by requiring that an absolute majority of the Legislature give its advice and consent, the Governor may be frustrated or hampered in his appointment power.[10] This is an indirect coercive influence of the Legislature on the Governor and is therefore in violation of the doctrine of Separation of Powers.

## III. CONCLUSION

To allow this intrusion by the Legislature into the executive branch of Government would open the door to the gradual erosion of the restraints engendered by the doctrine of Separation of Powers. There would be no logical termination point to the Legislature's power to give advice and consent. The Legislature could amend their procedure to require a two-thirds vote or even a unanimous vote.[11] This was not the intention of the Framers of the Constitution

---

[10] The Legislature claims that it is not their intent to encroach upon the Governor's appointment power pointing to the legislative history of the Bill. Fifteenth Legislature of the Virgin Islands, Regular Session. May 9, 1983 at 20. The intent, however, is not important. It is the effect which governs.

[11] In fact, at oral argument, Eric Dawson, attorney for the Legislature, stated that the Legislature had the power to require a unanimous vote in order to confirm a nomination of the Governor.

nor the Congress in promulgating the Revised Organic Act. It follows then that this Court must declare Act No. 4836 invalid.

## JUDGMENT

THIS MATTER is before the Court on a motion for judgment on the pleadings, there being no dispute as to material facts. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED, ADJUDGED AND DECREED:

THAT that part of Act No. 4836 which amends Title 3 of the Virgin Islands Code by adding § 65c, entitled Advice and Consent of Legislature, be and the same is hereby declared VOID.