THE HOUSE OF REPRESENTATIVES OF AMERICAN SAMOA
and MAILO SAOLUAGA T. NUA, in his capacity as a member of
and the Speaker of the House of Representatives, Petitioners,

v.

TAUESE P.F. SUNIA, in his capacity as the Governor of American
Samoa, and SOTOA MUASAU SAVALI, in his capacity as
Secretary of Samoan Affairs, Respondents.

High Court of American Samoa
Trial Division

CA No. 03-98

January 22, 1999

Before KRUSE, Chief Justice, LOGOAI, Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiffs, Arthur Ripley, Jr., and Aumoeualogo S. Salanoa
For Respondents, Henry W. Kappel, Assist. Attorney General

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

On January 6, 1998, the House of Representatives of American Samoa and House Speaker Mailo Saoluaga T. Nua ("the House") filed a complaint alleging that respondent Tauese P.F. Sunia, Governor of American Samoa ("the Governor") had failed to comply with the statutory requirement that he submit to the Legislature for confirmation his executive appointment for the position of Secretary of Samoan Affairs, respondent Sotoa Muasau Savali ("the Secretary"). Cross motions for summary judgment were filed by the respondents and the petitioners on July 22 and July 23, 1998, respectively, and a hearing was held before this court on September 14, 1998, with counsel present for both parties.[1]

### Facts

The relevant facts in this case are straightforward and uncontested. By stipulation of June 30, 1998, the parties agree that the Governor appointed Sotoa to the position of Secretary of Samoan Affairs early in 1997, but refused to submit his appointment to the Legislature for confirmation. Despite the explicit request of the Speaker of the House that he do so, the Governor has continued to resist confirmation for this post and the Secretary has retained his position throughout the duration of this dispute. Stipulated Statements of Facts, June 30, 1998.

### Summary Judgment

Summary judgment is appropriate when there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. T.C.R.C.P. 56(c). As noted above, the facts in this case are undisputed, leaving only the legal issue of whether the Governor was required by law to submit to the Legislature for confirmation his

---

[1] A second cause of action, related to the appointment of a Chief Procurement Officer, has been rendered moot by the Appellate Division's decision in *BHP Petroleum South Pacific, Inc. v. American Samoa Government*, 2 A.S.R.3d 10 (App. Div. 1998) and the Governor's subsequent appointment of ETC Lob Letalu Moliga to that post on July 15, 1998. *See* General Memorandum No. 51-1998, Office of the Governor, attached as Exhibit A to Respondents' Motion for Summary Judgment and Memorandum in Support.

appointment for the position of Secretary of Samoan Affairs. Summary judgment is appropriate in this matter.

## Discussion

We agree with the House's contention that a plain reading of the relevant statutes purports to require legislative confirmation for appointments to the position of Secretary of Samoan Affairs. The Revised Constitution of American Samoa provides that the Secretary "shall be the head of the Department of Local Government." REV. CONST. AM. SAM., art. IV, § 4. Further, the Department of Local Government is included in that statutory category of executive departments whose directors are "subject to confirmation by the Legislature . . . by a majority vote of the entire membership of each house of the Legislature." A.S.C.A. §§ 4.0301, 4.0112(a).

■ The larger issue, however, is whether the statutory confirmation requirements of A.S.C.A. § 4.0112(a) impinge upon the Governor's constitutional appointment powers, thereby rendering those provisions unconstitutional. The Revised Constitution of American Samoa sets forth the Governor's appointment power with respect to the Secretary of Samoan Affairs in very simple terms: "The Secretary of Samoan Affairs shall be appointed by the Governor from among the leading registered matais. He shall hold office during the pleasure of the Governor...." REV. CONST. AM. SAM., art. IV, § 4. Nowhere in the document is there any mention of a confirmation role for the Legislature which would limit these otherwise unrestricted powers.

■ The power of legislative confirmation is a familiar one in the American system of government. The federal Constitution, of course, vests this power in the Senate pursuant to the "advise and consent" clause of Article II. U.S. CONST. art. II, § 2, cl. 2. Various states have also followed this model and chosen to limit gubernatorial appointments to state offices in this manner. See HAWAII CONST., art. V, § 6, cl. 2 (providing for confirmation of all department heads "by and with the advice and consent of the senate"); WASH. CONST., art. XIII, § 1 (establishing procedure for legislative confirmation of all regents, trustees and commissioners of educational, reformatory and penal institutions); CAL. CONST., art. 20, § 22 (Director of Alcoholic Beverage Control, serving "at the pleasure of the Governor," nevertheless subject to confirmation by the Senate). In all of the foregoing examples, the power of confirmation is *constitutionally* vested in the legislature; in American Samoa, however, the Legislature has attempted to achieve this same result *statutorily* through the passage of A.S.C.A. § 4.0112.

■ As a general matter, the Revised Constitution of American Samoa clearly contemplates a government patterned after the federal tripartite

system and, accordingly, the well-established principle of separation of powers applies.[2] *BHP Petroleum South Pacific, Inc., v. American Samoa Government,* 2 A.S.R.3d 10 (App. Div. 1998). Under that doctrine, each branch of government has the "affirmative duty of exercising its own peculiar powers for itself, and prohibits the delegation of any of those powers *except in cases expressly permitted.*" 16 AM JUR 2D— Constitutional Law, § 294 (emphasis added); *Reelfoot Lake Levee Dist. v. Dawson,* 36 S.W. 1041, 1047 (Tenn. 1896).

In practice, of course, a constitution cannot possibly define and allocate all of the innumerable individual duties and powers that appertain to each branch of government. When a conflict arises between them, the judiciary is are called upon to determine whether a given power has been explicitly delegated by the constitution to one branch and, if not, whether that power is nevertheless inherently the function of either the executive, the legislature or the judiciary. As noted above, the power of appointment to the position of Secretary of Samoan Affairs is constitutionally vested in the Governor. REV. CONST. AM. SAM., art. IV, § 4. Because the power to confirm that appointment is not addressed, however, this court is now left to resolve the ultimate question of whether the process of confirmation is, by its nature, a legislative function which may be exercised even in the absence of an authorizing constitutional provision.

■ We agree with those courts which have explored the issue in finding that confirmation is not an inherent legislative power. Rather, confirmation should properly be seen as a specific attribute of the executive power of appointment which, in most cases, has been constitutionally delegated to the legislative branch:

> The appointive power here involved is executive or administrative in character. The power of the Legislature to consent or confirm executive appointments is also executive or administrative rather than a legislative function. But the Constitution itself transgresses the division of powers provision contained in it and, so far as it does, the separate departments have the power constitutionally granted.

*Wittler v. Baumgartner,* 144 N.W.2d 62, 71 (Neb. 1966). See *Myers v.*

---

[2] Even where no explicit provision in a constitution mandates a clear separation of powers, such a requirement may be inferred from the organization of government into three distinct branches: executive, legislature, and judiciary. 16 AM JUR 2D, Constitutional Law--§ 295; *Springer v. Philippine Islands,* 277 U.S. 189, 201 (1928) (application of separation of powers doctrine to territorial organic act is "a conclusion logically following from the separation of the several departments").

*United States,* 272 U.S. 56, 169 (1926) (U.S. Constitution's delegation of confirmation powers to the Senate is an "express and special grant of such extraordinary powers, not in any way related to or growing out of general Senatorial duties, and in itself a departure from the general plan of our Government"); *Luis v. Dennis,* 576 F.Supp. 733 (D. V.I. 1983) (confirmation procedures in territorial organic act found to be an expressly delegated executive function resulting in a "permitted invasion by one branch of the government into another"); *Walker v. Baker,* 196 S.W.2d 324, 328 (Tex. 1946) (although expressly delegated to the Senate by the Constitution, confirmation is a power "ordinarily and intrinsically belonging to [the Executive]").

 Similarly, the court in *Bradner* v. *Hammond* found confirmation to be an "express grant to the legislative branch of checks on the governor's power to appoint subordinate executive officers." 553 P.2d 1, 7 (Alaska 1976). Upon finding that confirmation was directly connected with the executive power of appointment, the *Bradner* court went on to note that "the separation of powers doctrine requires that the blending of governmental powers will not be inferred in the absence of an express constitutional provision." *Id.* at 7. This presents the very situation with which we are faced today, and we concur with the weight of authority in holding that the Legislature may not usurp the power of confirmation. As the Revised Constitution of American Samoa makes no provision for legislative confirmation of gubernatorial appointments to the office of Secretary of Samoan Affairs, that power continues to be attached to the executive power of appointment and remains vested solely in the Governor. On its face and without constitutional authorization, A.S.C.A. § 4.0112 offers the Legislature a critical means of severely limiting the executive power of appointment and, to the extent that it applies to the Secretary of Samoan Affairs,[3] that statute is hereby declared to be

---

[3] We are not presented with a challenge to the confirmation requirements for any other officials and decline to rule on the application of this decision thereto. However, we do note an important legal distinction *between the Secretary of Samoan Affairs and all other executive officers* listed in A.S.C.A. § 4.0301: while the former position is established in the Constitution itself pursuant to Article IV, Section 4, all of the latter are statutory creations. Although the legislative branch may not limit a constitutionally-granted power of appointment absent express constitutional delegation, there is some authority suggesting that when a legislature has itself empowered a governor to make certain appointments, then it is free to impose such conditions and limitations as it sees fit. 38 Am Jur 2d - Governor, § 5; *State ex. rel. Harvey v. Wright,* 158 S.W. 823, 826 (Mo. 1913).

Furthermore, a critical historical distinction also places the Secretary of Samoan Affairs in a unique position vis-à-vis all other executive appointments. Unlike the other posts, which have been added gradually

by statute over the years, the position of Secretary of Samoan Affairs dates back to the very origins of our modern, democratic form of government. On May 1, 1900, the first territorial governor, Commander B.F. Tilley, established by regulation the system of district governors, county chiefs, and village mayors which formed the antecedents of the current Department of Local Government. As the critical liaison between himself and this system of local officials, he appointed Mr. Edwin W. Gurr to the new post of Secretary of Samoan Affairs. FOFO I. F. SUNIA, THE STORY OF THE LEGISLATURE OF AMERICAN SAMOA 12-14 (The Legislature of American Samoa, GP Printers 1998).

One recent account of this early period places the importance of the position in its proper historical perspective:

> In the absence of government departments and agencies, the "Samoan Affairs" office was the focus of everything, and its head—the "Secretary"—was the man on the spot. The Governor relied on his expertise and counsel, and the people depended on him to relay their concerns to the Governor. Indeed, [the Secretary] was near indispensable.

*Id.* at 14. Perhaps it is this historical prominence which explains the decision by the framers to enshrine that position in the Revised Constitution of American Samoa itself, rather than leaving its creation to the whims of the Legislature. Whatever the reasons, however, the Secretary of Samoan Affairs remains both legally and historically distinct from his counterparts elsewhere in the executive branch, and this opinion is therefore strictly confined to the application of A.S.C.A. § 4.0112 to that particular position.

[4] Note that not all statutes which present separation of powers concerns will be declared unconstitutional. In *Nixon v. Administration of General Services,* the U.S. Supreme Court enunciated the following test for making this determination:

> [T]he proper inquiry focuses on the extent to which [the statute] prevents the Executive Branch from accomplishing its constitutionally assigned function. Only where the potential for disruption is present [must the statute be struck down].

433 U.S. 425, 443 (1976). See also *Parcell v. Kansas,* 468 F.Supp. 1274 (D.Kan. 1979).

Applying this test in the context of a challenge to confirmation procedures, the court in *Luis* v. *Dennis* found that even a minor alteration to the voting requirements (requiring confirmation by a majority of all legislators rather than merely a majority of those present) was sufficiently disruptive as to be declared unconstitutional. 567 F.Supp. 733 (D. V.I. 1983). Certainly, the imposition of confirmation requirements in the first place would also meet this test. By definition, the power of confirmation carries the potential for the rejection of the Governor's chosen appointee and thereby gives the Legislature the

## Conclusion

We note in closing that this court is not the first entity to determine that provisions for legislative confirmation of the Secretary of Samoan Affairs appointment should properly be included in the Constitution rather than added subsequently by statute. As respondents point out in their brief, then-Legislative Counsel Gata E. Gurr reached the same conclusion in 1993 (see memorandum of September 10, 1993, attached as Exhibit B to Respondents' Motion and Memorandum in Support).

Even more interestingly, however, an attempt was made to include a constitutional confirmation requirement for this position as early as twenty-five years ago. On September 6, 1973, a final draft of the proposed Revised Constitution of American Samoa was submitted to Salanoa S.P. Aumoeualogo, Chairman of the Constitutional Convention. That draft included a seemingly minor amendment to Article IV, Section 4, which, if passed, would have reversed the outcome of this controversy: "In addition to his other powers, the governor is authorized to appoint a Secretary of Samoan Affairs, *subject to approval by the Legislature,* who shall serve for a four-year term." Proposed Revised Constitution of American Samoa, submitted by Tuitele Leapaga Napoleone II, Chairman of the Convention Final and Form Committee (emphasis added). For whatever reason, this critical amendment has never been made; until it is, however, the Legislature is not at liberty to infringe upon those powers which remain constitutionally vested in the Governor.

## Order

For the foregoing reasons, petitioners' motion for summary judgment is denied, and respondents' motion for summary judgment is granted. The Secretary shall retain his position with or without the approval of the Legislature, and we hold that A.S.C.A. § 4.0112 is unconstitutional as applied to the position of Secretary of Samoan Affairs.

It is so ordered.